CHARLES R. RHODES, Petitioner, *v.* THE POLLUTION CONTROL BOARD *et al.*, Respondents.

(No. 11687; )

Fourth District—November 1, 1972.

Charles Rhodes, *pro se.*

William J. Scott, Attorney General, of Springfield, (Larry R. Eaton, Assistant Attorney General, of counsel,) for respondents.

Mr. JUSTICE SIMKINS delivered the opinion of the court:

The petitioner, Charles R. Rhodes, has asked this Court to review and reverse an order of the Pollution Control Board entered on September 16, 1971. The Board's order, promulgated under the provisions of the Environmental Protection Act (Ch. 111½, Sec. 1001 *et seq.*, Ill. Rev. Stats. 1971), ordered the petitioner to refrain from future violations of specific rules enacted by the Department of Public Health and imposed a fine in the amount of $1,500.00. The Board's order was entered after the Environmental Protection Agency (EPA) filed a complaint against Mr. Rhodes and conducted extensive hearings at which Mr. Rhodes was represented by counsel.

The petitioner has filed a three-page handwritten argument with this Court that we have accepted as his brief on appeal. In seeking to reverse the order of the Board, Mr. Rhodes has proceeded on two main theories. First, he has argued that he was not in violation of the Rules and regulations for Refuse Disposal Sites and Facilities (hereinafter referred to as Rules) and second, that the Rules in question were not applicable to his particular landfill. The *pro se* nature of petitioner's appeal coupled with the fact that no abstract or excerpt from record was filed has caused us to examine the record on appeal in detail to determine whether or not the petitioner's allegations are meritorious. We shall first consider

the petitioner's contention that no violations were established by the record.

■■ The Pollution Control Board found that the petitioner was guilty of four areas of violation: (1) that a floodgate near the landfill site was often clogged with brush and debris and therefore incapable of serving its intended function [1]; (2) that Mr. Rhodes did not confine the dumping of refuse to the smallest practical area [2]; (3) that refuse was not covered daily [3]; and (4) that salvage operations at the landfill site were not carried out in a sanitary manner and salvaged materials were not removed

---

[1] Section 12 of the Environmental Protection Act, Ch. 111½, Sec. 1012, Ill. Rev. Stats., (1971) provides, in part, that:

"No personal shall:

(a) Cause or threaten or allow the discharge of any contaminants into the environment in any State so as to cause or tend to cause water pollution in Illinois, either alone or in combination with matter from other sources, or so as to violate regulations or standards adopted by the Pollution Control Board under this Act:

(b) Construct, install, or operate any equipment, facility, vessel, or aircraft capable of causing or contributing to water pollution, or designed to prevent water pollution, of any type designated by Board regulations, without a permit granted by the Agency, or in violation of any conditions imposed by such permit; * * *."

Furthermore, Rule 2.02 of the Rules declares:

"FLOODING. Sites subject to flooding should be avoided, if possible. Sites located in areas which may be subject to flooding shall be protected by impervious dikes. Pumping facilities shall be provided for removal of seepage and surface waters."

[2] Dumping of refuse material at a landfill is covered by Rule 5.03: "DUMPING AREA. Dumping of refuse on the site shall be confined to the smallest practical area."

[3] Rule 5.07 deals with the question of the amount, frequency and type of cover material required for the type of landfill operated by petitioner:

"Rule 5.07. COVER. Cover material shall be of such quality as to prevent fly and rodent attraction and breeding, blowing litter, release of odors, fire hazards, and unsightly appearance, and which will permit only minimal percolation of surface water when properly compacted. Cover shall be applied as follows:

(a) Daily Cover. A compacted layer of at least six (6) inches of material shall be used to cover all exposed refuse at the end of each working day; except that on surfaces that will not receive an additional depth of refuse or the final cover within 60 days, a compacted layer of cover of at least one (1) foot shall be applied.

(b) Final Cover. A compacted layer of at least two (2) feet of material in addition to the daily cover shall be placed over the entire surface of all completed portions of the fill within six (6) months following the final placement of refuse. Final cover shall be graded as provided on the approved plan and to prevent ponding. The surface of the final cover shall be maintained at the plan elevation at all times, by the placement of additional cover material where necessary."

from the landfill on a daily basis.[4] Judicial review of decisions entered pursuant to the provisions of the Environmental Protection Act is governed by Sec. 41, Ch. 111½, Par. 1041, Ill. Rev. Stats. 1971, which provides that review shall be conducted in accordance with the provisions of the Administrative Review Act. (Ch. 110, Sec. 264 *et seq.*, Ill. Rev. Stats. 1971). Sec. 274 of that Act provides, in part, that "the findings and conclusions of the administrative agency on questions of fact shall be held to be *prima facie* true and correct." Therefore, we may not reverse the findings of the Board in this case unless they are contrary to the manifest weight of the evidence. (*Sturgeon v. Powell* (1971), 1 Ill.App.3d 130, 132, 273 N.E.2d 617; *John Sander, Inc. v. Donnelly* (1964), 53 Ill. App.2d 172, 177, 203 N.E.2d 20; *Turro v. Carpentier* (1960), 26 Ill.App.2d 156, 163, 167 N.E.2d 568.) The record in this cause indicates that there was evidence to support each facet of the Board's order and the violations in question were observed on more than one occasion. There is simply nothing before us to suggest in any manner that the findings of the Board were against the manifest weight of the evidence. *Sturgeon v. Powell, supra.*

■■ The petitioner has argued that the rules in question could not be complied with in every instance due to factors beyond his control such as inclement weather. However, a review of the testimony in this case reveals that the days on which infractions of the rules were noted were not days on which petitioner's operations were impeded by the elements. The final assertion made by the petitioner is that the rules in question were wrong and unreasonable when applied to his particular landfill. The Act, however, provides that once a violation is shown then the burden of proof is on the violator "to show that compliance with the Board's regulations would impose an arbitrary or unreasonable hardship." (Ch. 111½, Sec. 1031 (c), Ill. Rev. Stats. 1971.) This burden was not met by the petitioner.

For the reasons expressed herein, the order of the Pollution Control Board is affirmed.

TRAPP, P. J., and SMITH, J., concur.

---

[4] The manner in which salvage operations can be carried out is set forth in Rule 5.10 (d):

"SALVAGE OPERATIONS. Salvage operations are not recommended in conjunction with a sanitary landfill. In the event that salvage operations are carried out, the following conditions shall apply:

(d) All salvaged materials shall be removed from the landfill site daily, or properly stored such that they will not create a nuisance, rat harborage, or unsightly appearance."