CITIZENS UTILITIES COMPANY, Petitioner, *v.* THE POLLUTION CONTROL BOARD *et al.*, Respondents.

(No. 71-253;

Second District—November 16, 1972.

Chapman & Cutler, of Chicago, (John N. Vander Vries and Daniel J. Kucera, of counsel,) for petitioner.

William J. Scott, Attorney General, of Chicago, (Melvyn A. Rieff, Assistant Attorney General, of counsel,) for respondents.

Mr. PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

The petitioner, Citizens Utilities Company of Illinois, sought a variance under the provisions of the Environmental Protection Act. (Ill. Rev. Stat. 1971, ch. 111½, par. 1001 *et seq.*) The Illinois Pollution Control Board granted the variance but attached conditions to its administrative order, including a $1000 penalty.

In this appeal the petitioner argues that certain of the conditions imposed either wholly or in part are against the manifest weight of the evidence, are too vague to be enforced, and exceed the statutory authority of the Board. The monetary penalty is additionally attacked on the constitutional grounds that it is an unlawful delegation to an administrative board of judicial powers in conflict with the principle of separation of powers; and that the imposing of the penalty in a variance proceeding offends due process.

In the proceedings below, it appears that petitioner operates a secondary sewage treatment plant in connection with providing water and sanitary sewer service in an unincorporated area of Du Page County. The plant provides primary and secondary treatment and also contains a stabilization lagoon or pond which is used after secondary treatment for the settling of solids. The lagoon has been in operation for several years pursuant to the direction and approval of the Illinois Sanitary Water Board, the predecessor environmental agency. Petitioner proposed to install a tertiary sewage treatment system in the lagoon in order to provide tertiary treatment to meet new state-wide standards and to serve additional customers. The tertiary system essentially would require installing aerators in the lagoon. To properly install the aerators it would be necessary to fully clean the lagoon and place the components of the new system on its floor. This would necessitate taking the lagoon out of operation for a period of time so that it could be dewatered and accumulated quantities of sludge removed.

Citizens therefore petitioned for a variance to discontinue the operation of the lagoon for six weeks to permit cleaning of sanitary matter and solids from the lagoon and to install the tertiary treatment system. After a hearing the Board entered an order granting the variance subject to various conditions contained in paragraphs (1) through (13) of its order. The conditions in paragraphs (1) through (7) of the order were essentially those which the Illinois Environmental Protection Agency had recommended and to which petitioner agreed at the hearing.

In issue here are conditions in paragraphs (8), (10) and (12) which originated with the Board's order:

"(8) No new waste sources shall be connected to sewers tributary to the plant, nor existing discharges increased in strength or volume, until the lagoon is placed in full operation, or at any time in the future when the plant effluent exceeds regulation limits; on a monthly average, except that, upon Board approval of the plan for stormwater control required by paragraph (10) of this order, the Board may allow such additions after compliance is achieved in all other respects;

\* \* \*

(10) Within three weeks after termination of this variance the company shall file a report with the Agency and with the Board including all of the elements of the report required by paragraph (9) of this order, and in addition including a schedule for regular maintenance and cleaning of the lagoon and its associated equipment without bypassing directly to the stream, and a firm program for controlling stormwater inflow in the shortest practicable time so that compliance with the effluent standards will not be jeopardized;

\* \* \*

(12) Within 21 days after the date of receipt of this order the company shall pay to the State of Illinois the sum of $1000 as a penalty for the violations found and described in the Board's opinion; \* \* \*."

We first consider petitioner's contentions that paragraphs (8) and (10) are too vague to be enforced, and additionally are not supported by the evidence.

We would agree that the portion of paragraph (8) which prohibits "existing discharges increased in strength or volume" is vague and unenforceable as it reads. It has not been shown that Citizens has any control over the strength or volume or even the source of sewage which a home places into its system. The condition thus must be limited to circumstances relating to such discharges over which Citizens has practical control. Also, paragraph (8) in combination with paragraph (10) requires Citizens to submit for approval by the Board a "firm program for controlling stormwater inflow". While testimony at the hearing indicated that Citizens was presently engaged in some stormwater control measures, the extent of petitioner's ability and authority to control stormwater infiltration in its service territory was not revealed. Nor does the Board's order provide any standards for or limitations on what Citizens must do to comply with the stormwater program requirement. We therefore hold that the Board's order must be limited to allow any

reasonably effective plan for stormwater control, and to include only measures in establishing a firm program for controlling stormwater inflow which Citizens has the practical ability and authority to carry out.

However, we do find support in the record for the conditions set forth in paragraphs (8) and (10), if as indicated, they are made dependent on the limitation that Citizens has a practical method of control. Tests stipulated at the hearing show that the plant effluent both entering the lagoon and after discharge from it were in violation of the limits on discharges applicable to that plant. It is therefore reasonable to condition the grant of the variance upon terms designed to insure that once the aerators are installed, the plant will be in compliance with effluent standards.

■■ The question then becomes whether the conditions imposed in paragraphs (8) and (10) are appropriate safeguards to insure the effectiveness of the installation of the aerators. The Board's finding that the conditions are appropriate must be upheld unless against the manifest weight of the evidence. *Chicago Junction Ry Co. v. Illinois Commerce Com.* (1952), 412 Ill. 579.

The prohibition against new waste sources until the lagoon is placed into full operation embodies a condition already imposed by the Environmental Protection Agency acting under its permit powers. Prohibiting additional connections after the lagoon is in operation while effluent standards are violated speaks for itself. Additional sewage should not be introduced into a plant that cannot adequately process its present load. Testimony indicated the installation of the aeration equipment would not bring compliance with effluent standards if there were an overload problem. However, even this prohibition is mitigated. The Board may allow additional connections even while effluent standards are violated upon Board approval of a plan for stormwater control.

The record also supports the condition in paragraph (10) requiring a schedule for regularly cleaning and maintaining the lagoon. Citizens' district manager testified that the lagoon would have to be cleaned regularly. Yet there was no explanation in the record as to why the lagoon was allowed to deteriorate to the point where frequently the BOD "count" [1] has been higher for effluent discharged from the lagoon than for influent entering the lagoon, a fact never in dispute at the hearing.

The condition requiring a firm program for control of stormwater in-

---

[1] BOD was not defined in the record, but was treated by the parties and standards in Board regulations as an important measurement for assessing contamination of water discharged from sewage treatment facilities.

flow so that compliance with effluent standards will not be jeopardized also finds support in the record. Testimony at the hearing indicated that the ability of the plant to comply with effluent standards even after the installation of the aerators would depend upon the effectiveness of action taken to reduce excess storm flows into the plant. Other testimony and reports indicated an overload problem at the plant which reduced its ability to treat sewage. Citizens' district manager testified it was presently engaged in efforts to reduce excess water infiltration. There was no testimony showing that the installation of the aerators would compensate for the burden created by the overload problem, nor any evidence rebutting the Board's finding that compliance with effluent standards would be jeopardized without a program controlling stormwater input.

■■ We therefore conclude that the enforceable conditions of paragraphs (8) and (10) are supported by the evidence as proper safeguards to insure the usefulness of the installation of the aerators. Pursuant to section 12(e)(f) of the Administrative Review Act (Ill. Rev. Stat. 1971, ch. 110, par. 275(e)(f)), made applicable to appellate review under Supreme Court Rule 335(h)(2) (Ill. Rev. Stat. 1971, ch. 110A, par. 335(h)(2)), we remand paragraphs (8) and (10) of the Board's order with instructions to clarify these provisions by limiting the conditions dealing with existing discharges and stormwater control to the extent that Citizens has a practical method of control as heretofore indicated.

It is not entirely clear, either from the wording of the order below or from the briefs and argument, whether respondents insist that all provisions of the variance order must be complied with regardless of whether or not Citizens chooses to proceed with the requested variance. As a practical matter, counsel for Citizens has stated in oral argument that it must proceed with the variance in order to comply with the state law requiring tertiary treatment facilities. But we must consider the legal effect of the order in terms of the scope of the variance proceedings. We question whether unconditional orders may be issued under a variance proceeding.

■■ Variance proceedings are governed by Title IX of the Environmental Protection Act. (Ill. Rev. Stat. 1971, ch. 111½, pars. 1035—1038.) Section 36(a) provides that in granting a variance the Board may impose "such conditions as the policies of the Act may require  *  *  *." We believe that the plain meaning of this language is that conditions only attach to the grant of the variance. Thus if a petitioner considers the conditions too onerous and therefore decides not to proceed with the variance, the conditions may not be enforced. Section 37 provides that, if a hearing is held on the petition for a variance, sections 32 and 33(a)

under the enforcement title of the Act govern the procedure for the hearing. We do not believe that this reference to sections 32 and 33(a) for procedural guidelines incorporates the right to issue unconditionally binding orders in variance proceedings. After a proper hearing, section 33(a) authorizes the Board to issue and enter such final order or make such final determination as it shall deem appropriate under the circumstances. Consistent with section 36, any such order rendered at the conclusion of a variance hearing allowing the petition could only impose conditions on the grant of the variance, which would not be binding until the petitioner accepts the variance upon the terms imposed.

■■ Moreover, section 31 (Ill. Rev. Stat. 1971, ch. 111½, par. 1031), under the enforcement title, is not incorporated by reference to variance proceedings; and requires a different type of notice to be given to inform the petitioner of specific complaints or violations of law that might subject him to unconditional orders. In enforcement actions the burden of proof is on the Agency, whereas the burden under section 37 of the variance provisions is on the petitioner. We conclude that enforcement-type orders, that is, unconditional orders not dependent on the acceptance of the variance, may not be entered without compliance with the procedures under the enforcement provisions of the act. There one is entitled to notice of a specific violation charged against it, to notice of the specific conduct constituting the violation, and to the benefit of a favorable burden of proof. A contrary result would raise not only problems of statutory construction as we have noted, but would also, in our view, raise a constitutional issue of due process.

The Board's order should be construed so that the conditions embodied in it are not effective unless the variance is exercised. For the purpose of our consideration of the matter we assume that paragraphs (8), (10), and (12) are conditions to the grant of a variance and not unconditional, enforcement-type orders.

We now separately consider the more significant question involved in the $1000 penalty specified in paragraph (12) of the order. Petitioner initially argues that Title IX of the Act in question dealing with variances confers no authority on the Board to impose penalties as a condition of the grant of a variance; that penalties may only be imposed in enforcement proceedings pursuant to Title VIII of the Act and in accordance with Title XII; and points out that section 37 of Title IX, while referring to sections 32 and 33(a) of Title VIII, omits any reference to section 33(b) which specifies penalties.

The Board maintains that the statute does allow the imposition of penalties as a condition to the grant of a variance under the language of section 36(a), which states that in granting a variance "the Board may

impose such conditions as the policies of this Act may require"; and under the language of section 33(a), which empowers the Board to "issue and enter such final order, or make such final determination, as it shall deem appropriate under the circumstances." The Board also argues that the words "such final order" in section 33(a) are further explained by section 33(b) which specifically authorizes penalties, and that therefore the provisions of section 33(b) are included when reference is made to section 33(a). The Board vigorously urges that the policies of the Environmental Protection Act necessitate imposing penalties as a condition of a variance where appropriate because the variance grant itself precludes an enforcement proceeding and thus immunizes the polluter from prosecution thereunder.

However, we think that the legislative reference in section 37, which governs variances, to the procedure sections of the Act (Title VIII, sections 32, 33(a), *supra*), excluding any reference to enforcement orders and penalties, indicates a specific intent to exclude penalties as a part of the conditions of the grant of a variance. The fact that the Act provides enforcement proceedings to ascertain, penalize, and deter violators, further detracts from the Board's conclusion that such powers are necessarily included in variance proceedings. If the Board wanted to impose penalties against Citizens for violations of effluent standards or for the deterioration of the lagoon, the Agency should have filed a complaint and followed proper enforcement procedures, perhaps in a consolidated proceeding. Even if there had been no violations up to the time of the variance proceeding, a threatened violation necessitating the variance and caused by culpability on the part of the petitioner may be the basis of a complaint (*e.g.,* sections 12, 27; Ill. Rev. Stat. 1971, ch. 111½, pars. 1012, 1027); and the Board is not without authority (see sections 27, 10, 13, 22, and 25; Ill. Rev. Stat. 1971, ch. 111½, pars. 1027, 1010, 1013, 1022, 1025), to implement regulations designed to deal with potential polluters who bank on variance proceedings and hardship to the public to relieve them of liability.

██ In light of section 37's non-reference to section 33(b) in variance proceedings, and the Board's ability to pursue enforcement procedures, the general language in sections 33(a) and 36(a) relied on by the Board should not be read to authorize the imposition of penalties in variance proceedings. If the legislature had intended to allow the imposition of penalties in variance proceedings, we believe it would have used language that plainly expressed such a purpose, as it did for enforcement proceedings. Statutory authority to impose penalties generally should not be created by construction, but only by clear and explicit enactment. *Acme Fireworks Corp. v. Bibb* (1955), 6 Ill.2d 112, 119-120; *Cedar Park*

*Cemetery Assn. v. Cooper* (1951), 408 Ill. 79, 83; *Mallinckrodt Chem. Works v. Belleville Glass Co.* (1889), 34 Ill.App. 404, 412.

■■ We conclude that a fair construction of the statute in question precludes the Board from imposing a monetary penalty as a condition to the grant of a variance. We need not, therefore, reach constitutional issues of due process in the nature of the procedure followed, nor the question whether the imposition of a penalty by an administrative body constitutes an unlawful delegation of authority or is otherwise offensive to the theory of separation of powers.

Paragraph (12) of the Board's order below is stricken. The cause is remanded to the Illinois Pollution Control Board with the direction to reconsider the provisions of paragraphs (8) and (10) of the order consistent with this opinion. In all other respects the order below is affirmed.

Affirmed in part, reversed and remanded in part, with directions.

T. MORAN and GUILD, JJ., concur.