THE SHELL OIL COMPANY, Petitioner, *v.* THE POLLUTION CONTROL BOARD *et al.*, Respondents.

(No. 74-49; ▮▮▮▮▮▮▮

Fifth District—November 26, 1974.

Schlafly, Godfrey & Fitzgerald, of Alton, and W. D. Maer, of Houston, Texas, for petitioner.

William J. Scott, Attorney General, of Springfield (Larry R. Eaton, Assistant Attorney General, of counsel), for respondents.

Mr. PRESIDING JUSTICE GEORGE J. MORAN delivered the opinion of the court:

Shell Oil Company petitions for review of an order of the Illinois Pollution Control Board denying petitioner's motion for reconsideration of an order denying petitioner's petition for variance.

The issues presented by the petition are (1) whether the opinion and order of the Illinois Pollution Control Board denying petitioner's motion for reconsideration and the opinion and order of the Board denying the petition for variance are against the manifest weight of the evidence, and (2) whether the Illinois Pollution Control Board denied petitioner due process of law and equal protection of the law.

On March 19, 1973, Shell Oil Company, hereinafter referred to as "Shell," filed a petition for variance with the Illinois Pollution Control Board, hereinafter referred to as the "Board." The Illinois Environmental Protection Agency recommended that the variance be granted upon performance of certain conditions not in issue on appeal. On June 29, 1973, a hearing was held, and on October 5, 1973, the Board entered an opinion and order denying Shell's petition for variance, without prejudice. (Shell Oil Co. v. Environmental Protection Agency, PCB 73-116.) Petitioner filed a motion for reconsideration which was subsequently amended and augmented by an affidavit in support of the amended motion. The motion and affidavit were filed on November 27, 1973. Once again, the Illinois Environmental Protection Agency recommended approval, but the Board in its opinion and order of January 10, 1974, denied the motion for reconsideration. (Shell Oil Co. v. Environmental Protection Agency, PCB 73-116.) We affirm.

Shell operates an oil refinery in Wood River, Illinois. The refinery has a peak crude-oil capacity of 284,000 barrels per day. Waste water from the refinery is treated and discharged into the Mississippi River. Among the constituents of this discharge is cyanide. Rule 408(a), Part IV, Illinois Pollution Control Board Water Quality Regulation requires that effective December 31, 1973, waste-water discharge discharged from a facility such as petitioner's refinery must not contain more than 0.025 milligrams per liter (mg/l) of cyanide. Although the amount of cyanide in the refinery's effluent was quite small, it consistently exceeded the limit set by Rule 408(a). At the hearing, the sole witness, an employee of Shell,

testified concerning Shell's previously unsuccessful efforts at compliance, including consultations with experts from other companies. He testified that the technology did not currently exist to reduce cyanide levels to the required level but that Shell had developed "a potentially applicable cyanide-removal process" and that "laboratory investigations are continuing." The details of the process were not given. The witness also testified that for Shell to presently comply with Rule 408(a) it would have to shut down its catalytic cracking units, drastically cutting the refinery's production and requiring Shell to lay off many of its employees. Evidence was introduced that the adverse environmental impact of Shell's discharge was minimal, but the Board commented that the evidence was not persuasive. The Illinois Environmental Protection Agency did not cross-examine the witness or attempt to elicit the details of the process. In its affidavit in support of the motion for reconsideration, Shell gave a brief explanation of the process and additional discharge data compiled since the date of the hearing.

The petitioner first contends that the Board failed to base its decision on the manifest weight of the evidence in the record before it and therefore denied petitioner due procss of law. We believe that the issues in this case may be more clearly considered by discussing how petitioner's objection separately relates to the Board's orders. The Board's earlier order will be considered first.

■■ Section 2(b) of the Illinois Environmental Protection Act (Ill. Rev. Stat. 1973, ch. 111½, par. 1002(b)) states the purposes of the Act:

"\* \* \* to restore, protect and enhance the quality of the environment, and to assure that adverse effects upon the environment are fully considered and borne by those who cause them."

Section 26 (Ill. Rev. Stat. 1973, ch. 111½, par. 1026) gives the Board the power to adopt "such procedural rules as may be necessary to accomplish the purposes of this Act." Section 35 provides in part:

"\* \* \* the Board may grant individual variances beyond the limitations prescribed in this Act, whenever it is found, upon presentation of adequate proof, that compliance with any rule or regulation, requirement or order of the Board would impose an arbitrary or unreasonable hardship."

Pursuant to these provisions, the Board formulated Rule 405(b), Rules and Regulations of the Illinois Pollution Control Board, Chapter 1: Procedural Rules, Rule 405, which states in part:

"No variance shall be granted, with or without hearing, without adequate proof by the petitioner that compliance would impose an arbitrary or unreasonable hardship."

The burden of proof is thus on the petitioner seeking a variance to prove

that compliance with an applicable Board regulation would create an arbitrary or unreasonable hardship for the petitioner. Section 36(a) adds:

"In granting a variance the Board may impose such conditions as the policies of this Act may require. If the hardship complained of consists solely of the need for a reasonable delay in which to correct a violation of this Act or of the Board regulations, the Board shall condition the grant of such variance upon the posting of sufficient performance bond or other security to assure the completion of the work covered by the variance." (Ill. Rev. Stat. 1973, ch. 111½, par. 1036(a).)

The section requires that when the arbitrary or unreasonable hardship alleged in the petition consists of reasonable delay in complying with the Board regulations, the Board shall require "security" as a condition to granting a variance.

██ Shell presented uncontroverted evidence that an effective removal process for cyanide does not yet exist and that, for Shell to comply, it would have to close its catalytic cracking units, which would disastrously reduce employment and production at the Wood River refinery. Shell met its burden of showing that compliance with Rule 408(a) would at this time result in an unreasonable hardship for the corporation and its employees. The Board, however, determined that Shell failed to comply with the requirements of Section 36(a):

"The Board finds this petition to be similar to that filed by Texaco, PCB 73-6, decided July 19, 1973. There, as in the present case, Petitioner was seeking a variance from Rule 408. In Texaco (PCB 73-6), we denied the variance from Rule 408 because the Petitioner had not come forth with a program to achieve cyanide reduction. No date was given for ultimate compliance. The Board was not given any commitment as to the type of cyanide control program.

Shell has not presented any time table to the Board showing ultimate compliance nor has it set forth what type of program it is going to undertake to control the problem. Mere reference to 'laboratory investigations are continuing' is not sufficient to identify the 'pig in a poke'. (Texaco, 73-6)."

Shell's efforts were insufficient because the Board could and did impose a "condition" pursuant to section 36(a) in addition to that of showing an arbitrary or unreasonable hardship. The Board required the condition suggested in the second sentence of section 36(a), that "other security" be shown in the form of a firm completion date or explanation of the petitioner's research and development plans, before the variance would be granted. Surely the Board could reasonably conclude that some

kind of firm assurance of compliance or attempted compliance was required by the policies of the Act. (See section 2(b), *supra*.) Based on the undisputed facts that no compliance date was given and that Shell's plans were not explained at the hearing, the Board's decision was not against the manifest weight of the evidence.

■■ Petitioner further argues that the Board's decisions were against the manifest weight of the evidence because the evidence Shell presented in its affidavit in support of its motion to reconsider allegedly cured the defects the Board found in the evidence Shell presented at the hearing. Shell's contention is without merit. Shell in effect argues that we should vacate the first order of the Board as being against the manifest weight of the evidence because the Board failed to consider evidence not offered until after the Board had returned its first decision. Not only is this illogical, but it also violates the rule that the Board cannot base its decisions upon information not contained in the record of the cause before it. (*North Shore Sanitary District v. Pollution Control Board*, 2 Ill.App.3d 797, 277 N.E.2d 754.) In regard to the Board's second order, Shell's attempt to introduce additional evidence was untimely and improper. Rule 334, Rules and Regulations of the Illinois Pollution Control Board, Chapter 1: Procedural Rules, provides:

"Rule 334. *Motion Subsequent to Entry of Final Order.* Within 35 days after the entry of a final order and within such further time as the Board may allow, any party may file a motion for rehearing or modification of the order, or to vacate the order or for other relief * * *. A motion that in substance requests a variance shall not be brought under this rule."

Petitioner's introduction of new and additional evidence concerning emissions, testing techniques and proposed research and development plans really constituted a new proceeding, a request for a variance.

Petitioner also argues that it was denied equal protection of the law because it was treated differently from other petitioners who were granted variances. Shell cites *Morey v. Doud,* 354 U.S. 457, 1 L.Ed.2d 1485, 77 S.Ct. 1344, for the proposition that distinctions between business entities engaged in the same business must be reasonably based on differences between the businesses. Petitioner contends that in two subsequent cases, Clark Oil & Refining Corp. v. Environmental Protection Agency, PCB 73-238, and Union Oil Co. v. Environmental Protection Agency, PCB 72-447, the Board granted variances to the other refineries when the description of their operations and the cause of their cyanide problems indicated no real difference with the instant case. There were significant differences. In the Clark Oil case the Board found that the petitioner violated the cyanide standard only 10% of the time, that it was

developing a firm program to correct excessive cyanide discharges and that its discharge had a minimal adverse impact on the Mississippi River. In the Union Oil case the petitioner presented extensive evidence showing that numerous methods of control had been attempted or were being seriously considered and that despite the fact that petitioner's emissions constantly exceeded the limit, it had instituted a good-faith program of continuing research and development. These factors combined with the finding that the ultimate environmental impact of granting the variance would be minimal.

For the foregoing reasons, the order of the Illinois Pollution Control Board denying without prejudice Shell's petition for variance and denying Shell's motion for reconsideration are affirmed.

Affirmed.

EBERSPACHER and CARTER, JJ., concur.