HOLIDAY INNS, INC., Petitoner, *v.* THE POLLUTION CONTROL BOARD *et al.*, Respondents.

(No. 74-106; ▮▮▮▮▮▮▮▮▮▮)

Fifth District—April 18, 1975.

Irvin Slate, Jr., of Lueders, Robertson and Konzen, of Granite City, for petitioner.

William J. Scott, Attorney General, of Springfield (Larry R. Eaton and Anthony B. Cameron, Assistant Attorneys General, of counsel), for respondents.

Mr. JUSTICE KARNS delivered the opinion of the court:

This is a petition for review of an order of the Pollution Control Board denying petitioner, Holiday Inns, Inc., a variance from the water-pollution regulations promulgated under the Environmental Protection Act (Ill. Rev. Stat. 1973, ch. 111½, par. 1001 *et seq.*). Section 41 of the Act (Ill. Rev. Stat. 1973, ch. 111½, par. 1041.) provides that our review of a decision of the Pollution Control Board shall be conducted in accordance with the Administrative Review Act (Ill. Rev. Stat. 1973, ch. 110, par. 264 *et seq.*).

The petitioner operates a motel and apartment complex in an unincorporated, sparsely populated area of Madison County, near Edwardsville and Southern Illinois University at Edwardsville. The waste-treatment facility consists of a waste-stabilization lagoon. The effluent from the lagoon flows at the rate of 5 to 10 gallons per minute through a wooded, inaccessible ravine or natural watercourse towards an intersection of public highways, then along one of these highways, I-270, and finally enters Cahokia Creek, which flows ultimately into the Mississippi River. Generally, in the absence of extremely rainy conditions, there would be no flow into Cahokia Creek, as the effluent would have disappeared through percolation and evaporation. There are no residents or livestock along this ravine, which is wooded and removed from public access.

The present waste facility was constructed in 1962 under a permit issued by the Sanitary Water Board but does not operate in compliance with the water-pollution regulations promulgated by the Pollution Control Board, which became effective in July, 1972, as to the treatment of the content of the effluent from the lagoon.

In February, 1971, the prior operator of the motel employed an Illinois registered professional engineer to design a satisfactory pollution-treatment plant. Preliminary plans were submitted to the Environmental Protection Agency and approved by it in March, 1972. Final plans were completed in February, 1973. At that time, the management contract of the prior operator expired and was not renewed. The parent company, petitioner Holiday Inns, Inc., assumed the management of the motel complex and decided to redesign the treatment facility to accommodate an enlarged motel facility. This was done in September, 1973.

The proposed expanded treatment plant was approved by the Environmental Protection Agency and submitted for bid in November, 1973; however, the lowest bid exceeded the engineer's estimate by $110,000, which petitioner considered unreasonably high. Petitioner consulted the Environmental Protection Agency for assistance and advice, and the treatment facility was redesigned after some consultation with the tech-

nical staff of the Agency. Final plans for the redesigned treatment plant were to be completed in February, 1974, and construction completed by the end of 1974. Substantial cost savings were anticipated through the continued use of the existing lagoon in the treatment process.

A permit for construction of an interim chlorination plant was issued by the Environmental Protection Agency in February, 1974. This was never built because of cost considerations. The desirability of interim chlorination was discussed with representatives of the Agency, and petitioner's engineer testified that bids for the chlorination plant would be opened the first week in March, 1974. The record is silent as to the submission of the redesigned plant to the Agency for approval and permit.

On September 19, 1973, petitioner, Holiday Inns, filed a petition for a variance, subsequently amended on October 26, 1973, from compliance with effluent standards of Rule 404(f) of the water-pollution regulations until December 31, 1974. This rule governs biochemical oxygen demand (BOD) and suspended solids in sewage waste discharges. Compliance with the rule by December 31, 1973, was required. The petition for variance stated that petitioner would be in full compliance by December 20, 1974, or approximately one year later than required by the rule.

On November 16, 1973, the Environmental Protection Agency filed its recommendation that the petition for variance be denied. A hearing was held before the Pollution Control Board on February 11, 1974, and an order was entered on March 14, 1974, denying the requested variance.

On this appeal, petitioner urges that the decision of the Pollution Control Board be reversed for the reason that the immediate application of the Pollution Control Board's effluent standards would impose an arbitrary and unreasonable hardship on petitioner since it was proceeding with reasonable speed to construct an adequate pollution-treatment facility. Holiday Inns urges that there was no indication that the effluent from the present treatment lagoon posed any hazard to the public, considering the character of the area as wooded and remote. Petitioner further urges that the test samples of effluent taken by the Environmental Protection Agency were not taken in accordance with the Agency's regulation. As to this latter contention, we find it totally without merit. These samples were introduced in evidence without objection and, it would appear, with the concurrence of petitioner. Further, we are convinced that the Agency's rule providing a 24-hour averaging method of testing is intended as a rule to be employed as a means of proving compliance with the rules. It is not intended to restrict the Agency or the Pollution Control Board in determining a violation of the Act or of the rules and regulations by other methods of proof.

Section 35 of the Environmental Protection Act (Ill. Rev. Stat. 1973, ch. 111½, par. 1035.) provides that the Pollution Control Board "＊ ＊ ＊ may grant individual variances beyond the limitations prescribed in this Act, whenever it is found, upon presentation of adequate proof, that compliance with any rule or regulation, requirement or order of the Board would impose an arbitrary or unreasonable hardship." Section 36 of the Act (par. 1036) provides that variances may not be granted for a period of time in excess of 1 year.

The order of the Pollution Control Board denying the requested variance found that there was no showing of any arbitrary or unreasonable hardship on petitioner, rejecting the argument that the absence of any apparent public hazard would entitle the petitioner to the variance. It found that any hardship was of petitioner's own making in its dilatory manner in making management decisions as to motel size, engineering design and permissible costs. We emphasize that the requested variance was only that petitioner be excused from compliance with Rule 404(f) until December 31, 1974.

■■ In reviewing the order of the administrative agency, the Pollution Control Board, we are required to sustain its order if supported by creditable evidence. We do not weigh the evidence or make fact determinations. We would reverse the Board's denial of the requested variance only if we could say that its finding that a denial of a variance would not impose an arbitrary or unreasonable hardship on petitioner was against the manifest weight of the evidence, or was capricious or arbitrary. *Shell Oil Company v. Pollution Control Board,* 24 Ill.App.3d 549, 321 N.E.2d 170 (1974); *North Shore Sanitary District v. Pollution Control Board,* 2 Ill.App.3d 797, 277 N.E.2d 754 (1972); *Rhodes v. Pollution Control Board,* 8 Ill.App.3d 74, 289 N.E.2d 61 (1972).

■■ We do not reach this issue in the case before us for the reason that the question for decision has become moot because of the expiration of the period of time for which the variance was requested or could have been granted under section 36 of the Environmental Protection Act Ill. Rev. Stat. 1973, ch. 111½, par. 1036(b).

No enforcement proceedings were ever brought under Title VIII of the Act, nor was any fine or penalty imposed on petitioner for violation of any rule or regulation. Ill. Rev. Stat. 1973, ch. 111½, pars. 1030-1034, 1042-1045.

At one time, the Pollution Control Board did impose penalties in variance proceedings as one of the conditions to the grant of the variance. Every case considering the propriety of this practice held it beyond the power granted to the Board under the Act. *Citizens Utilities Co. v. Ill. Pollution Control Board,* 9 Ill.App.3d 158, 289 N.E.2d 642 (1972);

*Molex, Inc. v. Pollution Control Board,* 9 Ill.App.3d 1032, 293 N.E.2d 731 (1973); *City of Mattoon v. Environmental Protection Agency,* 11 Ill.App.3d 259, 296 N.E.2d 383 (1973); *Agrico Chemical Co. v. Illinois Pollution Control Board,* 13 Ill.App.3d 45, 299 N.E.2d 803 (1973).

The allegations set forth in the petition for variance contain admissions that the effluent from petitioner's treatment lagoon did not comply with the standards of Rule 404(f), and, in fact, the Board's order found that the effluent did not comply with the less restrictive treatment standards required by Rules 404(a) and 405 in force as early as July 31, 1972.

What we are suggesting is that regardless of the grant of a variance, petitioner may have been in violation of the effluent standards, and therefore subject to enforcement proceedings and possible penalties under Titles VIII and XII of the Act. Ill. Rev. Stat. 1973, ch. 111½, pars. 1031—1034, 1042—1045.

We consider that the allowance of the time-variance by the Board would not have foreclosed enforcement proceedings to be undertaken by the Agency before the Board. The Board's order recites that Holiday Inns, in requesting a variance, was actually seeking a shield from prosecution for violation of the water regulations. In *Citizens Utilities Co.,* the court discussed the interrelation of variance and enforcement proceedings. While the court held that a penalty could not be imposed as a condition to the grant of a variance, the holding did not foreclose the Board from filing an enforcement proceeding that could be consolidated with the variance proceeding. The court observed:

> "Even if there had been no violations up to the time of the variance proceeding, a threatened violation necessitating the variance and caused by culpability on the part of the petitioner may be the basis of a complaint (*e.g.,* sections 12, 27; Ill. Rev. Stat. 1971, ch. 111½, pars. 1012, 1027.); and the Board is not without authority (see sections 27, 10, 13, 22, and 25; Ill. Rev. Stat. 1971, ch. 111½, pars. 1027, 1010, 1013, 1022, 1025.), to implement regulations designed to deal with potential polluters who bank on variance proceedings and hardship to the public to relieve them of liability." 9 Ill.App.3d 158, 165, 289 N.E.2d 642, 648.

In short, the grant of a variance does not foreclose enforcement proceedings.

We might observe that petitioner's argument that no public hazard was involved in the operation of its waste-treatment facility would be appropriate to an enforcement proceeding, as would evidence of petitioner's efforts of compliance, including its effort to obtain a variance. While the authority to impose variable monetary penalties has been up-

held in *City of Waukegan v. Pollution Control Board*, 57 Ill.2d 170, 311 N.E.2d 146 (1974), "[s]uch impositions are, necessarily, subject to judicial review and to appropriate tests to determine whether the imposition is reasonable and proper under its circumstances in each particular case." *Ford v. Environmental Protection Agency*, 9 Ill.App.3d 711, 718, 292 N.E.2d 540, 545; *Bresler Ice Cream Co. v. Pollution Control Board*, 21 Ill.App.3d 560, 315 N.E.2d 619 (1974); *City of Monmouth v. Pollution Control Board*, 57 Ill.2d 482, 313 N.E.2d 161 (1974). Section 33(c) of the Act (Ill. Rev. Stat. 1973, ch. 111½, par. 1033(c)(i)) directs the Board to take into account in enforcement proceedings, "the character and degree of injury to, or interference with the protection of the health, general welfare and physical property of the people." The criteria to be followed by the Board in imposing penalties has recently been fully elucidated by the Illinois Supreme Court in *Southern Illinois Asphalt Co. v. Pollution Control Board*, 60 Ill. 204, 326 N.E.2d 406.

While the Board denied Holiday Inn's petition for variance, petitioner was never determined to be in violation of the Act, or any rules or regulation, nor was it ever subjected to any penalty. The request for variance asked for an extension of time until December 31, 1974, by which time petitioner stated it would be in full compliance with Rule 404(f). This time period has passed; nothing in the record before us indicates what has been done toward the installation of the pollution-treatment facility proposed by petitioner. The requested variance stated the plant would be operative by December 20, 1974; the relief requested of this court is that the Board be directed to issue the requested variance; that period has expired. Under section 36(b) of the Act the Board had no authority to grant a variance for more than one year from December 31, 1973.

For this court to grant the requested relief would be a nullity. We, therefore, hold that any error in the Board's order denying the petition for variance has been rendered moot by the passage of the time period for which the variance was requested and for which it could have been granted under the Act.

Accordingly the appeal is dismissed.

Appeal dismissed.

JONES, P. J., and EBERSPACHER, J., concur.