AGRICO CHEMICAL COMPANY, Petitioner-Appellant, *v.* THE ILLINOIS POL-
LUTION CONTROL BOARD *et al.,* Respondents-Appellees.

(No. 72-14; 

Fifth District—July 18, 1973.

Albert E. Schoenbeck, of Schoenbeck & Latourette, of St. Louis, Missouri, and Pope & Driemeyer, of East St. Louis, for appellant.

William J. Scott, Attorney General, of Springfield, (Thomas J. Immel and Frederick C. Hopper, Assistant Attorneys General, of counsel,) for appellees.

Mr. PRESIDING JUSTICE GEORGE J. MORAN delivered the opinion of the court:

Petitioner appeals from an order of the Pollution Control Board (Board) entered December 21, 1971.

Petitioner Agrico Chemical Company (Agrico) filed a petition for a variance under the provisions of the Environmental Protection Act (Ill. Rev. Stat. 1971, ch. 111½, secs. 1001 *et seq.*, more particularly secs. 1037 and 1038) on July 22, 1971. On August 23, 1971 Agrico was notified by a hearing officer for the Board that hearing was set for September 23, 1971. On September 21 the hearing officer called Agrico and postponed the hearing with Agrico's consent. On October 4, 1971 the Environmental Protection Agency (Agency) filed a motion to dismiss Agrico's petition

without prejudice. On October 13, 1971 Agrico requested that the hearing be rescheduled. On October 17, 1971 the hearing officer rescheduled the postponed hearing for November 17, 1971 on which date the hearing was held.

At the commencement of the hearing, the Agency recommended to the Board that Agrico's petition be denied, and gave this recommendation to Agrico for the first time. The testimony at the hearing, presented only by Agrico, indicated that Agrico had for some time been attempting to comply with various Board rules and regulations, but had been tardy in installing control equipment which it had previously agreed to buy and utilize. Agrico contended that they needed some time to get the equipment installed and operating at top efficiency.

The Board entered its order on December 21, 1971 granting Agrico the requested variance conditioned upon: (1) Agrico's diligently pursuing its control installation; (2) posting a $100,000 performance bond and filing progress reports on specified dates; and (3) Agrico's paying a $10,000 penalty for its previous delays in implementing its control program.

Agrico contends that: (1) the Board does not have power to impose a monetary penalty as a condition to the granting of a variance; (2) the Board does not have power to require petitioner to post a performance bond and file progress reports as a condition to the granting of a variance; (3) Agrico was denied due process because of the Board's failure "to take final action upon" Agrico's variance request "within 90 days after the filing of the petition" as required by Section 1038 of the Act; and (4) Agrico was denied due process by the failure of the Agency to promptly investigate Agrico's petition and make a recommendation to the Board as to the disposition of the petition as required by Section 1037 of the Act and by the failure of the Agency to make such recommendation "within 21 days after the filing of the petition" and "save a copy of its recommendation on the petitioner" as required by Rule 403 of the Rules and Regulations of the Board. We will consider these issues separately.

■■ The first issue is whether the Pollution Control Board has statutory authority to impose a penalty as a condition to granting a variance. This issue has been decided three times since the order in the instant case was handed down in December 1971. In *Citizens Utilities Co. v. Pollution Control Board*, 9 Ill.App.3d 158, 289 N.E.2d 642, Justice Seidenfeld observed that variance proceedings were governed by Title IX of the Act whereas penalties were imposed under enforcement proceedings pursuant to Title VII and held that:

"* * * the legislative reference in Section 37, which governs

variances, to the procedure sections of the Act (Title VII, sections 32, 33(a) supra), excluding any reference to enforcement orders and penalties, indicates a specific intent to exclude penalties as a part of the conditions of the grant of a variance.

\* \* \*

In light of section 37's non-reference to section 33(b) in variance proceedings, and the Board's ability to pursue enforcement procedures, the general language in sections 33(a) and 36(a) relied on by the Board should not be read to authorize the imposition of penalties in variance proceedings. If the legislature had intended to allow the imposition of penalties in variance proceedings, we believe it would have used language that plainly expressed such a purpose, as it did for enforcement proceedings. Statutory authority to impose penalties generally should not be created by construction, but only by clear and explicit enactment. Acme Fireworks Corp. v. Bibb (1955), 6 Ill.2d 112, 119-120; Cedar Park Cemetery Ass'n v. Cooper (1951), 408 Ill. 79, 83; Mallinckrodt Chem. Works v. Belleville Glass Co. (1889), 34 Ill.App. 404, 412.

We conclude that a fair construction of the statute in question precludes the Board from imposing a monetary penalty as a condition to the grant of a variance." 289 N.E.2d at 647-48.

In *Molex, Inc. v. Pollution Control Board,* 9 Ill.App.3d 1032, 293 N.E.2d 731 (1st Dist. 1973), the court also faced the issue of whether the Board could impose a penalty of $10,000 for past delays. Justice Goldberg quoted much of the cited opinion from the *Citizens Utilities* case and added:

"We are of the opinion that a careful reading of the enforcement provisions (Title VIII) and the variance provisions (Title IX) clearly indicates that the legislature intended the hearings for a variance under section 37 of the Act shall be held under the rules prescribed in sections 32 and 33(a). We believe that the legislature intentionally omitted the provisions of section 33(b) from applying to a variance hearing under section 37; and, therefore, under a strict interpretation of the Act the Board does not have the power to impose a penalty as a condition to granting a variance under the Environmental Protection Act." 293 N.E.2d at 732.

*Citizens Utilities* was also followed in *City of Mattoon v. Environmental Protection Agency,* 11 Ill.App.3d 259, 296 N.E.2d 383 (4th Dist., 1973), which case reached the same holding as *Citizens Utilities* and *Molex.* We agree with and follow the analysis and holdings of these three cases.

Therefore the condition that Agrico pay a $10,000 penalty must be stricken from the order.

The second issue is whether the Board has statutory authority to require petitioner to post a security bond and file progress reports as a condition to the granting of a variance. We have concluded that the statute does not give the Board authority to impose a monetary penalty as a condition to the granting of a variance because the legislature omitted the penalty provisions from the title of the Act governing variances. However, the situation concerning the posting of a performance bond and filing progress reports is different. Section 1036 (under Title IX: Variances) states in pertinent part:

> "(a) In granting a variance the Board may impose such conditions as the policies of this Act may require. If the hardship complained of consists solely of the need for a reasonable delay in which to correct a violation of this Act or of the Board regulations, the Board *shall condition the grant of such variance upon the posting of sufficient performance bond* or other security to assure the correction of such violation within the time prescribed.

> (b) *Any variance* granted pursuant to the provisions of this section *shall be granted * * * upon the condition* that the person who receives such variance shall make such *periodic progress reports* as the Board shall specify, * * *" Ill. Rev. Stat. 1971, ch. 111½, sec. 1036. (Emphasis added.)

■■ Thus the reasons for concluding that the Board lacks authority to impose monetary penalties as a condition to the granting of a variance are not applicable to the issue of Board authority to require the posting of performance bond and requiring the filing of progress reports. In the latter situation, specific statutory authority exists, and the Board has the power to require such a bond and progress reports. No issue was raised as to whether the *amount* of the bond was reasonable, but only whether the Board had *authority* to require the bond. While in some instances a bond may be so large as to be unreasonable, we need not determine that issue in this case.

The third issue concerns the 90-day rule. Section 1038 of the Act provides in part:

> "If the Board fails to take final action upon a variance request within 90 days after the filing of the petition, the petitioner may deem the request granted under this Act."

■■ In the present case the final order was filed 152 days after the filing of the petition on July 22, 1971. However, the record shows that on September 21 Agrico waived application of this 90-day rule. The verbal waiver was confirmed by letter dated September 23, 1971. Section 1038

is clearly designated to deal with the problem of bureaucratic procrasination. In this case the petitioner has waived the benefit of this rule. We hold that under these facts the 90-day rule is inapplicable and does not affect the validity of the Pollution Control Board's order.

The fourth issue involves the 21-day rule. Section 1037 of the Act requires the Agency to "promptly investigate" a petition for variance "and make a recommendation to the Board as to the disposition of the petition." Among the Procedural Rules promulgated by the Board, Rule 403(a) provides in part:

> "After investigating the variance petition and considering the views of person who might be adversely affected by the grant of the variance, the Agency shall within 21 days after the filing of the petition make a recommendation to the Board as to the disposition of the petition."

Rules 403(b) and 305(b) require the Agency to serve a copy of its recommendation on the petitioner by personal service or by registered or credited mail with proof of service by affidavit or mail receipt filed with the Board.

■■ In the instant case Agrico filed its petition on July 22, and the Agency's recommendation was not made until November 17, the day of the hearing. However no objection to the Board's failure to observe the 21-day rule was made by Agrico in the proceedings below. In fact, Agrico filed a motion to amend its petition for variance on October 17, 1971. Under these circumstances the failure of the Board to comply with the 21-day rule has been waived by Agrico.

That portion of the Illinois Pollution Board's order assessing a $10,000 penalty against Agrico is reversed. In all other respects the order below is affirmed.

Affirmed in part and reversed in part.

CREBS and JONES, JJ., concur.