ILLINOIS POWER COMPANY, Plaintiff-Appellee, *v.* THE POLLUTION CONTROL BOARD, Defendant-Appellant.

Fifth District   No. 81—627

Opinion filed February 1, 1983.

Tyrone C. Fahner, Attorney General, of Springfield (Greig R. Siedor, Assistant Attorney General, of counsel), for appellant.

Sheldon A. Zabel and Susan R. Lichtenstein, both of Schiff, Hardin & Waite, of Chicago, for appellee.

JUSTICE KARNS delivered the opinion of the court:

On October 30, 1981, the circuit court of Madison County granted summary judgment for plaintiff, Illinois Power Company, finding that its petition for permit review had concluded by operation of law for failure of the defendant, Illinois Pollution Control Board (Board), to take final action within 90 days as provided in section 40(a) of the Environmental Protection Act (Ill. Rev. Stat. 1981, ch. 111½, par. 1040(a)) and enjoining the Board from taking any action inconsistent with this determination. From this decision the Board appeals.

The facts are not in dispute. Illinois Power Company (IPC) operates the Wood River steam-electric power plant located in East Alton, Illinois. IPC was originally issued a permit to discharge pollutants from the plant into Illinois waters pursuant to State regulations. When the Illinois permit expired, Illinois had been given the authority to administer the Federal water pollution control permit program, the National Pollutant Discharge Elimination System (NPDES). Therefore, IPC made application with the Illinois Environmental Protection Agency (IEPA) for a NPDES permit and it was issued on October 24, 1979.

On November 21, 1979, IPC petitioned the Board for review of certain conditions in the permit imposed by the IEPA pursuant to section 40(a) of the Environmental Protection Act (Ill. Rev. Stat. 1981, ch. 111½, par. 1040(a)). At the same time, IPC filed a motion for stay requesting that the contested conditions be stayed until disposition of the review. The motion for stay was denied and on January 11, 1980, IPC filed a motion for rehearing. This motion was discussed at the Board's January 24, 1980, meeting but because several questions were raised concerning the motion, action was continued until February 7, 1980. At the February 7 meeting, the motion for rehearing was denied. Subsequently, a hearing officer was appointed to preside over a hearing on IPC's original petition for review. The hearing was set for October 2, 1980.

IPC then sought a declaratory judgment in the trial court that the review of the permit had concluded, that the Board was without jurisdiction to hold the October 2 hearing and that the permit as issued and appealed be deemed in effect. IPC relies on section 40(a) of the Act, which reads in part:

> "If the Agency refuses to grant a permit under Section 39 of this Act, the applicant may, within 35 days, petition for a hearing before the Board to contest the decision of the Agency. * * * If there is no final action by the Board within 90 days, petitioner may deem the permit issued under this Act * * *." (Ill. Rev. Stat. 1981, ch. 111½, par. 1040(a).)

Inasmuch as the Board did not act within the 90-day period, IPC claims the permit issues as a matter of law. See *Marquette Cement Manufacturing Co. v. Pollution Control Board* (1980), 84 Ill. App. 3d 434, 439, 405 N.E.2d 512, 516.

Here, the Agency did not "refuse to grant a permit" to IPC; rather, a permit was granted with certain conditions that IPC found unacceptable. In the trial court, the Board contested the applicability of the procedural requirements of section 40(a) to permit reviews

where the Agency had not denied a permit but only attached conditions which an applicant found unacceptable. On this appeal, the Board has conceded the applicability of section 40(a) to this permit review but has requested that we not address this question in a precedential manner in our opinion. IPC has declined to accept this concession and has argued that the court should decide this important question. We agree.

■ We believe that it is apparent that the IEPA could effectively deny a permit to an applicant by attaching conditions to the grant of the permit that the applicant could not possibly satisfy. Only section 40 of the Act deals with the subject of permit reviews before the Board, and we are satisfied that the General Assembly intended the procedural time requirements to apply to all permit actions taken by the IEPA, otherwise the review of permit conditions would be outside the Board's jurisdiction, a result we believe could not be intended considering the comprehensive nature of the Act and the quasi-judicial function of the Pollution Control board. (See *Landfill, Inc. v. Pollution Control Board* (1978), 74 Ill. 2d 541, 554, 387 N.E.2d 258, 262.) The use of the wording "refuses to grant a permit" in section 40(a) of the Act is, in our opinion, equivalent to "denies a permit application as requested by the applicant." This is the view taken by the first chairman of the Board, Professor David P. Currie. Currie, *Enforcement Under the Illinois Pollution Law*, 70 Nw. U. L. Rev. 389, 477 n.435 (1975).

The Board admits no final action was taken within the 90 days but contends that section 40(a) does not apply to NPDES permit reviews; although, the wording of section 40(a) does not distinguish between permits issued under section 39(a) of the Act (Ill. Rev. Stat. 1981, ch. 111½, par. 1039(a)) and NPDES permits issued under section 39(b) of the Act (Ill. Rev. Stat. 1981, ch. 111½, par. 1039(b)), the latter section being drafted to insure that any such permit shall be in compliance with both Illinois law and regulations and the Clean Water Act of 1977 (33 U.S.C. sec. 1251 *et seq.* (Supp. 1978)) and regulations pursuant thereto. Because of the relationship between State and Federal law in the issuance of NPDES permits, the IEPA need not act on NPDES permit applications within 90 days. The United States Environmental Protection Agency has 90 days to object before a NPDES permit may issue (33 U.S.C. sec. 1342(d) (Supp. 1978)). But once the IEPA has acted, the permit review provisions of section 40 make no distinction between NPDES permits and other permits issued under the Act.

Instead, the Board asserts that section 13(b)(1) of the Act is con-

trolling. That section provides:

"(b) Notwithstanding other provisions of this Act and for purposes of implementing an NPDES program, the Board shall adopt:

(1) Requirements, standards, and procedures which, together with other regulations adopted pursuant to this Section 13, are necessary or appropriate to enable the State of Illinois to implement and participate in the National Pollutant Discharge Elimination System ***." (Ill. Rev. Stat. 1981, ch. 111½, par. 1013(b)(1).)

Under this section all regulations adopted were to be consistent with Federal law and otherwise consistent with the Illinois act.

Because the Board believed application of section 40(a) to NPDES permits would cause a conflict with Federal law, it stated in the Environmental Register (No. 205, November 27, 1979) and in a Board opinion (*Nichols Homeshield Inc. v. Environmental Protection Agency* (Feb. 21, 1980), 37 Ill. P.C.B. Op. 391) that section 40(a) would not apply to NPDES permit review by the Board. Its reasoning was that permits granted by operation of law under section 40(a) would issue with or without the conditions sought by the party seeking review; in other words, the permit would issue as requested by the applicant. For example, the permit might contain effluent limitations less strict than the Federal limits required under the Clean Water Act (33 U.S.C. sec. 1251 *et seq.* (1978)). As a result, violations of Federal law would occur and continued Illinois authority to administer the program would be jeopardized.

We cannot conclude that the General Assembly authorized the Board to repeal the 90-day time limit for NPDES permit reviews. We would note that the Board never attempted to adopt a formal rule purporting to remove NPDES permits from the operation of section 40(a). (See Ill. Rev. Stat. 1981, ch. 111½, pars. 1026, 1028.) Furthermore, such a delegation of legislative power would raise serious constitutional problems, which we need not address, considering our disposition of the other issue raised by the Board. We simply cannot read into section 13(b)(1) an intention that the General Assembly authorized the Board to amend the clear procedural requirements of section 40(a); nor do we find that the application of section 40(a) to NPDES permits causes a conflict with Federal law.

■ The result of inaction by the Board during the 90 days period is that the "petitioner may deem the permit issued." (Ill. Rev. Stat. 1981, ch. 111½, par. 1040(a).) Our reading of that language in context of the rest of the Act leads us to conclude, as indeed IPC has argued,

that a permit issued by operation of law under section 40(a) does not issue with or without any particular conditions or in the manner requested by the aggrieved party as the Board has argued. A permit issued by operation of law after initial denial could not contain conditions. In fact, a determination of the specific content of permit conditions was not sought by IPC nor made by the trial court. Instead, the effect of inaction by the Board for 90 days is that the party seeking review has a permit and is protected from charges of operation without a permit, a violation of both State and Federal law. (Ill. Rev. Stat. 1981, ch. 111½, par. 1012(b), (f); 33 U.S.C. secs. 1311, 1342 (Supp. 1978).) it does not insulate the permittee from compliance with all Federal and State substantive standards and limitations. This result does not make the review superfluous as the Board suggests, for legally unjustified or arbitrary conditions in the permit are no longer binding on IPC. In the case of a permit review challenging conditions, if the permit issues by operation of law, the permit issues without the challenged conditions.

If the conditions were properly imposed under the Act and regulations, IPC concedes that they would remain valid and enforceable. In summary, IPC is vulnerable to any charge for a legal violation except that of operating without a permit. Thus, there can be no conflict with Federal law. As IPC has so aptly stated, the 90-day requirement of section 40(a) evinces legislative concern with bureaucratic delay. It was not the intent of the General Assembly to create a "license to pollute."

Our decision is supported by a comparison to the provisions governing air operating permits issued pursuant to section 9.1 of the Environmental Protection Act. (Ill. Rev. Stat. 1981, ch. 111½, par. 1009.1.) As with water pollution control, Federal law establishes substantive standards and limitations for the control of air pollution. (42 U.S.C. sec. 7401 et seq. (1981).) State regulations are to be in substance identical with Federal regulations in order to implement the Act. (Ill. Rev. Stat. 1981, ch. 111½, par. 1009.1(c).) However, as to air operating permits, the General Assembly explicitly made section 40(a) applicable. Thus, if the Board does not act within 90 days to review denial of a permit or conditions imposed in a permit, the air operating permit issues by operation of law. (See Marquette Cement Manufacturing Co. v. Pollution Control Board (1980), 84 Ill. App. 3d 434, 405 N.E.2d 512.) If, as the Board contends, the permit issues with the conditions sought by the party in effect, the Federal regulations could be violated. The General Assembly, by providing for review of permits under section 40(a), precluded any interpretation of the section except

that the permit protects the party from charges of operating without a permit.

It is true that IPC would not have the burden of proof in an enforcement action for violation of a standard, as it does in a permit review. We note, however, that section 40(a) was enacted to counter administrative delay in issuing permits and all the Board must do to avoid the problem is to act within the 90 days.

A final point raised by the Board is that the United States Environmental Protection Agency (USEPA) was a necessary party to this action.

■ Sections 2—404 and 2—405 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, pars. 2—404, 2—405) establish the boundaries within which the court must operate in determining who is a necessary party. The supreme court has further refined the law in the context of specific cases. (*Mills v. Ehler* (1950), 407 Ill. 602, 617, 95 N.E.2d 848, 856; *Oglesby v. Springfield Marine Bank* (1944), 385 Ill. 414, 423, 52 N.E.2d 1000, 1004.) In this case, we believe USEPA would be a necessary party if its interest in the subject matter of the suit would be materially affected by a judgment entered in its absence. *Lain v. John Hancock Mutual Life Insurance Co.* (1979), 79 Ill. App. 3d 264, 268-69, 398 N.E.2d 278, 283.

■ The IEPA is required to provide notice to the USEPA of every action related to a permit application. The USEPA is then given the opportunity to review permits proposed to be issued by the States. It can prevent issuance of a permit by exercising its veto power or it may acquiesce in a permit's issuance. (33 U.S.C. sec. 1342(d)(1), (d)(2) (Supp. 1978); Memorandum of Agreement between the Illinois Agency and USEPA.) The authority to review permits is needed to preserve the Federal effort to control pollution of the nation's waters. It is needed to see that Federal law is being upheld and enforced. (*United States v. Cargill, Inc.* (D. Del. 1981), 508 F. Supp. 734, 740, 742.) Because IPC's permit only protects it from charges of operating without a permit, no violation of Federal law could occur. The interest of the USEPA is not materially affected if the permit issues since USEPA's purpose in reviewing the permit has been satisfied. Therefore, we hold that the USEPA is not a necessary party to this action.

Contrary to the assertion of the PCB, the judgment of the trial court did not have the effect of granting IPC a permit containing the changes sought by IPC. It provided that the permit review had concluded by operation of law, "leaving said permit as appealed in effect."

In accordance with the views expressed herein, the judgment of the circuit court of Madison County is affirmed.

Affirmed.

HARRISON, P.J., and KASSERMAN, J., concur.