WASTE MANAGEMENT OF ILLINOIS, INC., Petitioner, v. THE POLLU-
TION CONTROL BOARD *et al.*, Respondents.

First District (6th Division)   No. 1—89—2541

Opinion filed July 20, 1990.—Rehearing denied September 19, 1990.

EGAN, J., specially concurring.
McNAMARA, J., dissenting.

Pederson & Houpt, of Chicago (Donald J. Moran and Marilee Roberg, of counsel), for petitioner.

Neil F. Hartigan, Attorney General, of Springfield (Michelle D. Jordan, Matthew J. Dunn, and Patricia E. Collins, Assistant Attorneys General, of Chicago, of counsel), for respondents.

PRESIDING JUSTICE LaPORTA delivered the opinion of the court:

Petitioner, Waste Management of Illinois, Inc. (Waste Management), sought local site approval from the Village of Bensenville (Village) for construction of a solid waste transfer station pursuant to section 39.2 of the Environmental Protection Act (Act) (Ill. Rev. Stat. 1987, ch. 111½, par. 1039.2). Following an evidentiary hearing, the Village denied the request for site approval, and Waste Management appealed the Village's decision to the Illinois Pollution Control Board (PCB). Ill. Rev. Stat. 1987, ch. 111½, par. 1040.1.

On review, the PCB upheld the Village's denial of site approval for the waste transfer station. Following the PCB's denial of its motion to reconsider, Waste Management filed its petition for review with this court. Ill. Rev. Stat. 1987, ch. 111½, par. 1041.

The record reveals that on July 22, 1988, Waste Management filed with the Village a proposal for construction of a solid waste transfer station on approximately seven acres of property located immediately east of Waste Management's Garden City disposal plant, a waste hauling company, in the Village of Bensenville. The transfer station was designed to receive, compact, and transfer to sanitary landfills nonhazardous and nonspecial refuse. Its purpose was to make waste hauling in the service area more efficient and cost effective. The facility was also to be used as a processing center for recycling aluminum, paper, glass, wood skids, and cardboard. The transfer station operations, including unloading, compacting, and loading were to be completely enclosed, minimizing or eliminating noise, odors, dirt, and litter.

On November 10, 1988, the Village held a hearing on the proposal for the waste transfer station. In addition to the members of the vil-

lage board, counsel for Waste Management and for the Village were present. At the hearing, Waste Management presented seven witnesses who testified in support of the application. No testimony or other evidence was presented in opposition to the proposal.

The evidence offered by Waste Management to establish the necessity for the waste transfer station consisted of the testimony of Edward Evenhouse, general manager of the Garden City disposal plant (Garden City). Evenhouse testified that the waste transfer station was necessary due to three factors: (1) the scarcity of available landfill space in the vicinity of the service area; (2) the imposition of a quota system by the nearest available landfill; and (3) the then-present inefficiencies of transporting waste from the service area to existing disposal sites.

On cross-examination Evenhouse stated that Garden City did not service all of the waste needs in the area, but he was unable to testify as to the percentage of waste Garden City did handle within the service area. He also acknowledged that the application for site location approval did not include an economic analysis of the proposal.

Evenhouse testified further that the waste collected by Garden City was taken to various landfills and waste transfer stations including those located at Hooker Street in Chicago, Lake landfill in Northbrook, the Groot transfer station, Congress Development landfill, Mallard Lake, and Woodland and Settlers Hills. Evenhouse was unable to testify as to the amount of waste that was being transported to the Lake landfill, but acknowledged that Lake landfill had obtained a three-year extension of its operations. He could not state the projected life of the Congress Development landfill, and although he testified that this facility had imposed quotas limiting the amount of waste it would accept from Garden City, Evenhouse did not know the maximum number of loads it would accept. He also stated that his information regarding the projected closing of the Mallard Lake landfill in 1993 was derived from newspaper articles and that the Mallard Lake landfill had never refused to accept waste from Garden City.

Evenhouse also testified that the Mallard Lake landfill was about eight miles from Garden City and that the Congress Development facility was about four miles away. Evenhouse indicated that these were reasonable distances to drive a collection truck to unload. He testified that he hoped the construction of the transfer station would improve the efficiency of Garden City's operations by allowing for the elimination of some of its collection trucks, and he stressed the importance of recycling waste. Evenhouse stated that the proposed transfer station was designed to accommodate a maximum of 12 loads per day, but ac-

knowledged that the application for site approval did not limit Garden City to 12 loads per day. He also indicated that Garden City could initiate recycling operations on this site without obtaining approval from the Village.

On February 2, 1989, the Village denied the application for site approval, finding that Waste Management had not established that the waste transfer station was necessary or that the impact on existing traffic flow would be minimal. (Ill. Rev. Stat. 1987, ch. 111½, pars. 1039.2(a)(i), (a)(vi).) On February 8, 1989, Waste Management filed its petition for review with the PCB. (Ill. Rev. Stat. 1987, ch. 111½, par. 1040.1(a).) On June 21, 1989, at the PCB's request, Waste Management waived the statutory deadline of June 22, 1989, and agreed to a continued decision date of June 29, 1989. On June 27, 1989, Waste Management, at the request of the PCB, again waived the statutory deadline and the decision date was continued to July 13, 1989.

On July 13, 1989, the PCB issued an order affirming the denial by the Village of the application for local site approval for the waste transfer station. The order did not set forth the reasons for the PCB's decision, but stated that an opinion in support of the order would be issued on August 10, 1989. The July 13, 1989, order also provided that the time period within which the PCB would entertain any motions for reconsideration would commence with the issuance of its August 10, 1989, opinion.

In the opinion issued August 10, 1989, the PCB upheld the Village's determination on the question of the necessity of the waste transfer station, but found that the Village's decision regarding traffic flow was against the manifest weight of the evidence. The PCB affirmed the Village's denial of site approval on the basis that Waste Management had not established that the transfer station was necessary to accommodate the waste needs of the area it was intended to serve.

Waste Management filed a motion for reconsideration with the PCB, asserting that the PCB had not taken final action within 120 days as required by statute (Ill. Rev. Stat. 1987, ch. 111½, par. 1040.1) and that the PCB had erred in affirming the Village's determination regarding the necessity of the transfer station (Ill. Rev. Stat. 1987, ch. 111½, par. 1039.2(a)(i)). Upon the denial of its motion for reconsideration, Waste Management filed the instant petition for review with this court.

We initially consider whether Waste Management's application for site location of the waste transfer station should be deemed approved due to the failure of the PCB to issue its opinion within 120 days.

In this case, the PCB was required to take final action on Waste Management's petition by July 13, 1989, in compliance with section 40.1 of the Act (Ill. Rev. Stat. 1987, ch. 111½, par. 1040.1). Waste Management contends that the July 13, 1989, order did not constitute final action and, consequently, its application should be deemed approved by operation of law. The Village and the PCB assert that although the order of July 13, 1989, did not contain the explanation of the decision, it was a final determination affirming the Village's denial of site location approval. We find this argument unpersuasive.

■■■ Section 40.1(a) of the Act outlines the procedure for appeal to the PCB from a denial of local site approval and provides that if there is no final action by the PCB within 120 days, the petitioner may deem the site location approved. (Ill. Rev. Stat. 1987, ch. 111½, par. 1040.1(a).) Section 33(a) of the Act requires the PCB to file and publish a written opinion stating the facts and reasons leading to its decision. (Ill. Rev. Stat. 1987, ch. 111½, par. 1033(a); *Wells Manufacturing Co. v. Pollution Control Board* (1978), 73 Ill. 2d 226, 233-34, 383 N.E.2d 148, 151; *Mystik Tape v. Pollution Control Board* (1975), 60 Ill. 2d 330, 336, 328 N.E.2d 5, 8; *Clean Air Coordinating Committee v. Environmental Protection Agency* (1976), 42 Ill. App. 3d 124, 128, 355 N.E.2d 573, 576.) We believe that these two sections of the Act must be considered together when determining the deadline for final action by the PCB. (See generally *Clean Air Coordinating Committee*, 42 Ill. App. 3d at 127, 335 N.E.2d at 576; *Waste Management of Illinois, Inc. v. Pollution Control Board* (1988), 175 Ill. App. 3d 1023, 1035, 530 N.E.2d 682, 692.) When read together, these two sections indicated that the PCB must issue its final determination within 120 days and that the final determination must include the reasons leading to its decision.

■■ An administrative order is final if the process of administrative decision making has reached a stage where judicial review will not disrupt the orderly process of adjudication, and the rights and obligations of the parties have been determined, or legal consequences will flow from the agency action. *Port of Boston Marine Terminal Association v. Rederiaktiebolaget Transatlantic* (1970), 400 U.S. 62, 71, 27 L. Ed. 2d 203, 210, 91 S. Ct. 203, 209; *McHenry County Landfill, Inc. v. Environmental Protection Agency* (1987), 154 Ill. App. 3d 89, 98, 506 N.E.2d 372, 378.

■■ The requirement that the PCB set forth the reasons leading to its decision is essential because it provides this court with the information necessary for a complete and fair review of the administrative decision by the PCB, and without such information, a thorough

and judicious review of the decision cannot be made. *Wells Manufacturing Co.*, 73 Ill. 2d at 234, 383 N.E.2d at 151; *Mystik Tape*, 60 Ill. 2d at 336, 328 N.E.2d at 8; *Clean Air Coordinating Committee*, 42 Ill. App. 3d at 128, 355 N.E.2d at 576; *Allied Metal Co. v. Pollution Control Board* (1974), 22 Ill. App. 3d 823, 833, 318 N.E.2d 257, 264.

■ The July 13, 1989, order in the case at bar cannot be considered a final determination of the proceedings before the PCB because it merely affirmed the Village's denial of the site location without setting out the facts and reasons justifying the decision. The August 10, 1989, opinion recited the evidence and reasons to support the earlier decision and must be held to be a material and substantive modification of the PCB's earlier decision. (*Clean Air Coordinating Committee*, 42 Ill. App. 3d at 128, 355 N.E.2d at 576.) Prior to the issuance of the August 10, 1989, opinion, neither party could speculate as to the basis for the PCB's affirmance of the permit denial, and this court would not have had the information necessary for a complete and fair review of the ultimate and final decision of the PCB. *Clean Air Coordinating Committee*, 42 Ill. App. 3d at 128, 355 N.E.2d at 577.

■ Moreover, the actions of the PCB indicate that it perceived the August 10, 1989, opinion to be the final action disposing of Waste Management's application. The rules of the PCB provide that a party may bring a motion for reconsideration of a final order within 35 days. (35 Ill. Adm. Code §103.240 (1985).) The July 13, 1989, order specifically stated that motions for reconsideration would not be entertained until after the issuance of the August 10, 1989, opinion. This provision in the July 13, 1989, order indicates that the PCB was aware that further action was required and determined that it would entertain motions for reconsideration only upon the entry of a final order which ultimately disposed of the site location application.

■ ■ In addition, the PCB did not reject as untimely the motion for reconsideration filed by Waste Management on August 25, 1989. A party challenging an administrative order must file a motion for reconsideration or a petition for review by the appellate court within 35 days. (35 Ill. Adm. Code §103.240 (1985); Ill. Rev. Stat. 1987, ch. 111½, par. 1041(a).) In the instant case, if the July 13, 1989, order constituted the final action by the PCB, a motion for reconsideration or a petition for review by this court would have been due on or before August 17, 1989. If the August 10, 1989, opinion constituted the final action by the PCB, a motion for reconsideration or a petition for review by this court would have been due on or before September 14, 1989. Although Waste Management did not file its motion for reconsideration until August 25, 1989, the PCB considered the arguments

raised therein without rejecting the motion as untimely. Thus, the record shows that the PCB itself perceived the August 10, 1989, opinion to be the final disposition of the application for site location approval and deemed the August 25, 1989, motion for reconsideration timely filed. The PCB also made no motion to dismiss the September 20, 1989, petition for review in this court as untimely.

■ Furthermore, the filing of a petition for review in this court functions as a notice of appeal (107 Ill. 2d R. 335) and causes the jurisdiction of the appellate court to attach *instanter*, depriving the administrative agency of jurisdiction to modify its judgment (see *Bachewicz v. American National Bank & Trust Co.* (1985), 135 Ill. App. 3d 294, 297-98, 482 N.E.2d 95, 98; *Montgomery Ward & Co. v. Wetzel* (1981), 98 Ill. App. 3d 243, 249, 423 N.E.2d 1170, 1176). Thus, once a petition for review has been duly filed, the administrative agency is restrained from taking any action which would change or modify the decision or its scope and from taking any action which would have the effect of interfering with the review of the decision. *Bachewicz*, 135 Ill. App. 3d at 297-98, 482 N.E.2d at 98; *Dunn v. Dunn* (1979), 71 Ill. App. 3d 649, 653, 390 N.E.2d 136, 139.

■ In the instant case, if Waste Management had treated the July 13, 1989, order as a final determination and filed a petition for review in this court, appellate jurisdiction would have attached *instanter*, precluding the PCB from modifying its order or issuing the August 10, 1989, opinion which recited the evidence and reasons leading to the earlier decision. Thus, when the July 13, 1989, order was issued, the process of administrative decision making had not yet reached a stage where judicial review would not disrupt the orderly process of adjudication. *Port of Boston Marine Terminal Association*, 400 U.S. at 71, 27 L. Ed. 2d at 210, 91 S. Ct. at 209; *McHenry County Landfill*, 154 Ill. App. 3d at 98, 506 N.E.2d at 378.

We believe the legislature intended that the final decision and supporting reasons be issued within 120 days and that this procedural requirement is mandatory and must be strictly applied. See *Illinois Power Co. v. Pollution Control Board* (1985), 137 Ill. App. 3d 449, 484 N.E.2d 898.

For all of the reasons set forth above, we hold that the August 10, 1989, opinion constituted the final determination by the PCB. Because the PCB failed to issue this opinion within the statutory time period, Waste Management's application for site location of the waste transfer station must be deemed approved in accordance with the terms of section 40.1(a) of the Act. (Ill. Rev. Stat. 1987, ch. 111½, par. 1040.1(a).) Having reached this conclusion, we need not consider

the other issues raised by the parties.

For the foregoing reasons, the decision of the Illinois Pollution Control Board is reversed.

Reversed.

JUSTICE EGAN, specially concurring:

I concur specially to respond to the dissenting opinion. I believe the crux of the problem is the question of when the aggrieved party *must* file for administrative review from a decision of the Pollution Control Board. Few would disagree, I believe, that the rigid rule that a complaint for administrative review must be filed within a prescribed period leads often to harsh results. The reports abound with cases wherein the unlucky, or unwary, appellant has learned to his dismay that he has run afoul of the often-confusing rules requiring that he file his complaint for administrative review in either the circuit court or appellate court within a certain period. The rule is jurisdictional, and reviewing courts have often, *sua sponte*, dismissed administrative appeals because of the lapse of time.

The dissent observes that the Board entered its final order on July 13, 1989, and, that "[t]heoretically, petitioner could have immediately filed its appeal in this court [on July 13, 1989]." (201 Ill. App. 3d at 630.) The dissent concludes, "From a 'pragmatic' and 'flexible' approach, the Board order on July 13 was final." (201 Ill. App. 3d at 630.) Those observations of the dissent pinpoint the issue; for I believe that if the order of July 13, 1989, was final and appealable the dissenting opinion is correct and the majority is wrong. In my judgment, the order of July 13 was not appealable, and to use a "pragmatic" and "flexible" approach in deciding whether an order is appealable would place all litigants before the Pollution Control Board in a jurisdictional wilderness.

The dissent refers to four Federal cases in support of its conclusion that the order of July 13 was appealable. Those cases are more persuasive for the position of the majority than that of the dissent. Two of the cases and the Federal statute cited in the dissent, 5 U.S.C. §553 (1988), involve the rulemaking, not adjudicatory, powers of the agencies.

One of the other two cases was *ITT World Communications, Inc. v. Federal Communications Comm'n* (2d Cir. 1980), 621 F.2d 1201. The dispute in that case was over which of two *final* orders was entitled to priority for the purpose of determining which Federal district had jurisdiction. No one contended that the orders were not final, and

no one argued that any order was not final until the full text of the agency's decision had been released. The case was decided by a three-judge panel. I find noteworthy the fact that two judges of the Second Circuit refused to base their decision on determination of which final judgment had priority on equitable grounds. They held that the prior final order which contained the minutes of the meeting of the agency and the description of its decision and order was sufficient. Even more noteworthy, all three judges deplored uncertainty in any rule which would leave the parties guessing as to the appropriate procedural steps to be followed.

In the last case, *Westinghouse Electric Corp. v. United States Nuclear Regulatory Comm'n* (3d Cir. 1979), 598 F.2d 759, the Third Circuit Court of Appeals was again presented with the same question as in *ITT World Communications, Inc.*, that is, which of two Federal circuits had jurisdiction. Significantly, the court expressly refrained from deciding which of two orders was a "final order." (598 F.2d at 768.) Of equal significance is other language from *Westinghouse Electric* following the language quoted in the dissent:

> "On the other hand, there is something to be said in favor of the position that when the agency promises to provide in a short time a statement of reasons, its order is not 'final' until the statement is published, particularly since the practice of separating the order and its underlying reasons has received judicial sanction [citation]. That way, parties will not feel compelled to file unnecessary 'protective' orders out of uncertainty, [citation], *and those parties that delayed in filing petitions for review in reliance upon the agency's promise to issue a statement of reasons in due course will not be penalized for so relying.*" (Emphasis added.) 598 F.2d at 768 n.35.

I emphasize the last part of the quote because it is particularly pertinent here. In this case, the Board told the petitioner on July 13, 1989, that the time period within which the Board would entertain any motions for reconsideration would begin with the issuance of its August 10, 1989, opinion. If the dissent is correct, this was a promise the Board was powerless to keep. Jurisdiction is not to be retained or surrendered depending on the Board's whim, discretion or largesse. On August 17, jurisdiction of the Board would end (and so would the jurisdiction of this court). The petitioner would simply be "penalized for so relying" on the Board's promise.

The dissent states that the fact that the Board told the petitioner that the time for filing a motion to reconsider would not begin until August 10 did "not indicate the Board did not intend the July 13 or-

der not to have legal effect until August 10." (201 Ill. App. 3d 633.) I find that conclusion impossible to accept. The Board's own regulation provides as follows:

"Within 35 days after the adoption of a *final order*, any party may file a motion for rehearing or modification of the order or to vacate the order or for other relief. Response to said motion shall be filed within 14 days from the filing thereof. A motion filed within 35 days stays enforcement of the *final order* and the time for appeal from such order runs anew after the Board rules upon motion." (Emphasis added.) (35 Ill. Adm. Code §103.240 (1985).)

It seems obvious to me that under that regulation the Board considered its August 10 opinion to be the "final order."

It should also be observed that none of the Federal cases involves any statute like section 33(a) (Ill. Rev. Stat. 1987, ch. 111½, par. 1033(a)) that could be construed as a requirement that a final order must contain the written reasons for the agency's action.

The specific language of the statute in question is as follows:

"(a) After due consideration of the written and oral statements, the testimony and arguments that shall be submitted at the hearing, or upon default in appearance of the respondent on return day specified in the notice, the Board shall issue and enter such final order, or make such final determination, as it shall deem appropriate under the circumstances. In all such matters the Board shall file and publish a written opinion stating the facts and reasons leading to its decision. The Board shall immediately notify the respondent of such order in writing by registered mail." Ill. Rev. Stat. 1987, ch. 111½, par. 1033(a).

It must be more than coincidence that the legislature saw fit to put the sentences in the sequence that it did. It seems inescapable to me that the legislature intended that the "final order" or "final determination" should contain the written opinion stating the facts and reasoning leading to the Board's decision. If the dissenting opinion is correct, the second sentence is merely a collection of precatory words, and the Board need never file a written opinion. After a petition for review is filed in the appellate court, thus divesting the Board of jurisdiction, could the Board properly file a written opinion?

The dissent also states that the Board's opinion was filed within the 35-day time period in which the petitioner could have filed a motion for reconsideration, or a petition for review in this court, neither of which it chose to do at that time. Understandably, it did not choose

to do so in light of the Board's statement that the time for filing a motion to reconsider would not begin until the Board filed its written opinion on August 10. Surely all recognize that in order to file an intelligent motion to reconsider, the movant must know the Board's reasons for its decision. Under the dissent's holding, the petitioner would be faced with a Hobson's choice: either to forego the right to seek any further relief before the agency and file a petition for review in the appellate court or to file a meaningless, *pro forma* motion to reconsider.

The dissent refers to the conscientiousness of the Board and the lack of prejudice to the petitioner. I have no reason to believe that the Board was not conscientious, nor do I believe that prejudice to the petition has been shown. But when we are deciding whether a tribunal has jurisdiction, such equitable considerations are not relevant.

The dissent also speaks of the severe burden that would be imposed on the community involved and on the resources of the municipal and administrative agencies involved if judicial review is denied "under the circumstances before us." The opinion cites *Citizens Against Randolph Landfill (CARL) v. Pollution Control Board* (1988), 178 Ill. App. 3d 686, 533 N.E.2d 401, for a holding that the statutory deadline was considered waived where the court found that injustice would result, including the denial of the right of citizens of a county to an adjudication on the merits. I believe the dissent has misinterpreted the holding of that case.

In the appellate court the county, which objected to the application for a landfill site approval, argued that the applicant had waived the right to claim that the deadline had expired before the Board acted because of procedural steps the applicant had taken before the Board. In the appellate court, the applicant argued that the county had waived the right to argue, *in the appellate court,* waiver on the part of the applicant *before the Board,* because the county allegedly had not raised that argument before the Board. The appellate court permitted the county to advance the argument that the applicant had waived certain rights before the Board and invoked an exception to the general rule that matters not advanced in the tribunal below may not be raised for the first time on appeal. The appellate court then considered the county's claim and determined that the applicant had waived the right to claim the expiration of the deadline because of certain actions the applicant had taken before the Board. The appellate court did not say that the applicant waived any right because of any hardship that the citizens of the county would incur by a denial of their right to an adjudication on the merits.

I would not be honest if I were to refuse to acknowledge that a reversal of the Board's decision in this case might be unfair to the Village of Bensenville. Regrettably, every case barring relief because of the expiration of a statute of limitations or because a court has lost jurisdiction may lead to a harsh result, as I indicated in the beginning of this opinion. The potential for injury to litigants lies in the statute itself. As originally enacted, the statute imposed a 90-day limitation. It was amended to provide for a 30-day tolling period when the Board might be unable to muster a quorum. It was amended again to extend the limitation period from 90 days to 120 days; it retained the same tolling period. It is fair to assume that complaints from the Board prompted the amendments. If problems still exist, the solution to the problems is in the hands of the legislature; it is not the province of a court to amend a statute by judicial interpretation.

In *Cummings v. Daley* (1974), 58 Ill. 2d 1, 317 N.E.2d 22, three individuals made complaints against the plaintiffs with the City of Chicago Commission on Human Relations. After a hearing, the commission found the plaintiffs guilty of violations of the city fair housing ordinance. The ordinance provided that the commission was to render a written report after a hearing; it further provided that no report should be delayed more than 60 days after the commencement of the hearing. The supreme court held, since the commission rendered its report three days late, that the commission had lost jurisdiction and its order was void. The supreme court so held despite the fact that the complainants in the case were the truly aggrieved parties and not the commission itself.

In summary, pragmatism, flexibility, conscientiousness and prejudice are not considerations in determining appealability. Otherwise, reviewing courts would be judging appealability of lower tribunal's orders under an abuse of discretion standard. Whatever weakness the majority holding may have, it possesses an overriding strength that the dissenting opinion's holding does not—certainty for the litigants; they will know when they *must* file a petition for review.

JUSTICE McNAMARA, dissenting:

I respectfully dissent from the majority holding that the Board order filed within the mandated time limit did not constitute final action. I believe the Board could properly file its order and opinion separately, under the factual setting presented here. Neither the statute, Board rules, nor applicable case law requires a simultaneous filing of the order and opinion.

The majority attempts to force a merger between the section 33

requirement that a written opinion with reasons be filed, and the section 40.1 requirement that final action be taken within 120 days. The majority's analysis rests upon what I believe is an erroneous assertion that "these two sections of the Act must be considered together." (201 Ill. App. 3d at 619.) As support, the majority cites "generally," *Clean Air Coordinating Committee v. Environmental Protection Agency* (1976), 42 Ill. App. 3d 124, 127, 355 N.E.2d 573, and *Waste Management of Illinois, Inc. v. Pollution Control Board* (1988), 175 Ill. App. 3d 1023, 1035, 530 N.E.2d 682. Those cases fail to support a holding that sections 33 and 40.1 must be read together.

In *Clean Air*, the question was whether an application for rehearing to the Board could be filed during an indefinite period. If so, the Act characterized the application as the commencement of an entirely new proceeding before the Board. The Board's rule provided that the application for rehearing could be filed within 35 days after the final order or in "such further time as the Board may allow." Thus, it appeared to describe an indefinite period and therefore would constitute a new proceeding. Yet, the last sentence of the Board rule stated that a petition filed in apt time stayed enforcement of the final order, and, thus, the rehearing apparently was *not* a new proceeding. This court resolved the confusion by reading together the 35-day or "in such further time" language, with the last sentence. It held that the application for rehearing had to be filed either within 35 days or within such further extension as may be initiated *within* the original 35 days, and thus it was not a new proceeding and would stay enforcement of the final order. *Clean Air*, 42 Ill. App. 3d at 127.

In *Waste Management*, this court faced an apparent inconsistency in the Act. The question was whether the local county board could establish procedures for conducting the local siting approval hearings. Section 39.2 stated that the procedures "provided for in this Act" were "exclusive." Yet section 40.1 stated the "procedures used by the county board" had to be fundamentally fair. The Act provided no procedures for conducting local hearings. The apparent inconsistency required that the court "read together" the two provisions. It held that the county board could establish procedures for local hearings, as long as the procedures were not inconsistent with the Act and were fundamentally fair. *Waste Management*, 175 Ill. App. 3d at 1035-36.

Both *Clean Air* and *Waste Management* involve statutory conflicts requiring resolution by reading one provision in such a way as to explain or define the other provision and thereby avoid any apparent contradiction. The case before us presents so such contradiction. One provision requires final action, an order, within 120 days. Another

provision requires written findings and reasons for the order without specifying any time limit and without requiring the opinion to be filed simultaneously with the order. No conflict exists. Nothing ties the one provision to the other. I believe that artificially forcing the provisions together creates a new, meaningless and unintended requirement.

> "Orderly rules of procedure are necessary in order that appellate review may be had of agency findings, but empty formalities devoid of either substantive or procedural benefit have no place in the normal scheme for administrative review unless Congress chooses to place them there." (*United States v. Benmar Transport & Leasing Corp.* (1979), 444 U.S. 4, 6, 62 L. Ed. 2d 5, 8, 100 S. Ct. 16, 17 (after a petition for judicial review had been filed in court, the agency could properly grant a motion for rehearing to correct errors, where the reopening on the agency level would not interfere with the judicial review).)

I believe that to require the Board to file the order and opinion simultaneously in the present factual setting is meaningless.

I also note that the Act envisions two separate documents, an order and an opinion. (The Board rules also repeatedly refer to two separate documents, an "order" and an "opinion." See 35 Ill. Adm. Code. § 103.224 (1985).) For example, section 33(a) of the Act requires the Board to "enter such final *order* *** as it shall deem appropriate." (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 111½, par. 1033(a).) The Board complied by filing its final order on July 13, 1989.

Section 33 also requires the Board to "file and publish a written *opinion* stating the facts and reasons leading to its decision." (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 111½, par. 1033(a).) Thus, it is only the opinion, and not the order, which must include findings. The Board complied by filing its written opinion stating facts and reasons on August 10, 1989.

Section 33 mandates only that the Board notify respondent of the *order* (Ill. Rev. Stat. 1987, ch. 111½, par. 1033(a)), and only the *order* is enforceable (Ill. Rev. Stat. 1987, ch. 111½, par. 1033(d)). And, it is a violation of the *order* which subjects respondent to civil penalties in an action brought by the State's Attorney or Attorney General. Ill. Rev. Stat. 1987, ch. 111½, par. 1042.

Section 40.1(a) provides that the Board has 120 days to take "final action" (Ill. Rev. Stat. 1987, ch. 111½, par. 40.1(a).) The Board complied by filing its order within the 120-day limit, plus the agreed-to extensions. Nothing in the Act states that the 120-day limit also applies to the opinion.

Notably, section 40.1 refers to section 33 only in saying that "[a]t

such hearing the rules prescribed in Sections 32 and 33(a) \*\*\* shall apply," and the burden of proof is on petitioner, and no new evidence may be received. (Ill. Rev. Stat. 1987, ch. 111½, par. 1040.1(a).) Thus, section 40.1 incorporates only the hearing procedure factors of section 33. The incorporation does not relate to the issuance of the Board's order or opinion.

I believe that the question here is not whether the Act *mandates* the filing of a written opinion simultaneously with the order. Instead, it is whether the law *permits* the subsequent filing of the opinion.

The majority repeatedly points to the long-recognized principle that an agency's specified reasons for its decision enable a court to fully and completely review the decision. (*Wells Manufacturing Co. v. Pollution Control Board* (1978), 73 Ill. 2d 226, 383 N.E.2d 148; *Mystik Tape v. Pollution Control Board* (1975), 60 Ill. 2d 330, 328 N.E.2d 5; *Illinois Power Co. v. Pollution Control Board* (1985), 137 Ill. App. 3d 449, 484 N.E.2d 898.) The principle for which the cases stand, however, is not at issue here, since the Board's opinion spelled out its reasoning in detail and enabled us to fully review the decision.

The majority finds the law does not permit the order standing alone, absent the findings and reasons underlying the order, to be considered "final action." (Ill. Rev. Stat. 1987, ch. 111½, par. 1040.1(a).) The only law it cites is *Clean Air*. In that case, the Board filed both a timely order and an opinion on January 9, and the EPA filed a timely motion for reconsideration on February 5. While that motion was pending before the Board, on February 13, the EPA filed for judicial review before this court. On February 14, the Board filed a second order and opinion, in which it made "a material and substantive revision of the Board's earlier decision." (*Clean Air*, 42 Ill. App. 3d at 128, 355 N.E.2d at 576.) The court held that the February 13 petition for review in this court was premature and ineffective to serve as a notice of appeal. The EPA could not appeal until February 14, when the Board entered the decision on the motion for reconsideration and thereby terminated the proceedings before the Board.

In the present case, the filing of a premature appeal is not an issue. The Board issued its order, then its opinion, and petitioner filed a motion for reconsideration. The Board then denied that motion, all prior to the filing for administrative review in this court.

An agency action is final when the administrative decision making has reached a stage where judicial review will not disrupt the orderly process of adjudication, and rights or obligations have been determined or legal consequences will flow from the agency action. (*Bell v. New Jersey* (1983), 461 U.S. 773, 76 L. Ed. 2d 312, 103 S. Ct. 2187;

*Abbott Laboratories v. Gardner* (1967), 387 U.S. 136, 18 L. Ed. 2d 681, 87 S. Ct. 1507.) Determinations of finality are based on a "pragmatic" and "flexible" approach. (*Abbott Laboratories v. Gardner*, 387 U.S. at 149-50, 18 L. Ed. 2d at 692, 87 S. Ct. at 1516.) Courts take a case-by-case approach to determining finality. See generally J. Stein, G. Mitchell, B. Mezines, 5 *Administrative Law* §48.03[1] at 48—15, 48—16 (1988).

Under the Environmental Protection Act, the orderly process of adjudication of appealing the municipality's denial of a request for section 39.2 local siting approval for construction of a solid waste transfer station before the Board consists of: filing a petition for a hearing before the Board; the Board's publication of notice of the hearing; the hearing itself; and the Board's taking final action within 120 days of the petition's filing. Ill. Rev. Stat. 1987, ch. 111½, par. 1040.1(a).

Every step of this orderly process had been completed as of July 13, 1989. Theoretically, petitioner could have immediately filed its appeal in this court. The Board decision was final where it was promulgated in a formal manner; it was definitive; it was not a tentative ruling or ruling of a subordinate official; and the agency expected compliance with it. (See *Abbott Laboratories v. Gardner*, 387 U.S. at 151, 18 L. Ed. 2d at 693, 87 S. Ct. at 1516-17; see also *Bell v. New Jersey*, 461 U.S. 773, 76 L. Ed. 2d 312, 103 S. Ct. 2187.) The Board's decision making process had reached a stage where judicial review would not disrupt the orderly process of adjudication.

In addition, legal consequences flowed from the Board's July 13 order. Had petitioner proceeded with the implementation of the solid waste transfer station, it would have been in violation of the Act and subject to penalties.

The 120-day requirement reflects the legislative concern with bureaucratic delay. (*Illinois Power Co. v. Pollution Control Board* (1983), 112 Ill. App. 3d 457, 445 N.E.2d 820; *Agrico Chemical Co. v. Illinois Pollution Control Board* (1973), 13 Ill. App. 3d 45, 299 N.E.2d 803.) As a practical matter, petitioner was given a hearing and final action was determined during the mandated statutory period. From a "pragmatic" and "flexible" approach, the Board order on July 13 was final. In fact, the Board's opinion was filed within the 35-day time period in which petitioner could have filed a motion for reconsideration, or a petition for review in this court, neither of which it chose to do at that time. Therefore, the adjudication process of neither the agency nor of the court was interfered with and both continued in an orderly fashion, without prejudice to petitioner.

This split in time in filing an order and its supporting opinion with reasons and findings has been approved in other contexts. For example, under the Federal statute, 5 U.S.C. §553 (1988), a statement of reasons need not

> "be published at precisely the same moment as the regulations. The agency must be allowed some latitude for technical difficulties. The enquiry must be whether the rules and statement are published *close enough together in time* so that there is no doubt that the statement accompanies, rather than rationalizes the rules." (Emphasis added.) *Tabor v. Joint Board For the Enrollment Of Actuaries* (D.C. Cir. 1977), 566 F.2d 705, 711 n.14 (the case was dismissed because Board filed findings six months after publication of temporary rules, and ten weeks after publication of the final rules; court held the statement of reasons was nothing but a litigation document, *i.e., post hoc* rationalizations supplied purely for litigation purposes).

The *Tabor* holding was followed in *Baltimore & Ohio Chicago Terminal R.R. Co. v. United States* (3rd Cir. 1978), 583 F.2d 678, 688: "[T]he mere failure to publish the statement of the rule's basis and purpose at the same moment as the regulations are published does not constitute a violation of §553(c)." A two-month delay beyond the statutory limit was permitted where the court found the report and order more than fulfilled the statutory purpose of facilitating judicial review. See also *ITT World Communications, Inc. v. Federal Communications Comm'n* (2d Cir. 1980), 621 F.2d 1201, 1204 (court holds that agency's December 12, 1979, decision was a "final order" although written opinion stating reasons and findings was not released for three weeks); *Westinghouse Electric Corp. v. United States Nuclear Regulatory Comm'n* (3d Cir. 1979), 598 F.2d 759, 768 n.35 (The court noted that the initial December 23 order, without the required findings, could be a final order because it met the conditions of finality. "Indeed, in contrast to the December 23 decision, the May 8 Memorandum had no practical consequence." It was important, however, that the statement of reasons was not a *post hoc* rationalization devised just for litigation purposes).

Here, the order and opinion were filed within a very short time of each other, and there was no interference with judicial review. The return of the Board member who held the fourth vote in the majority in this 4 to 3 decision permitted the immediate filing of the opinion.

A similar split in filing the order and opinion occurred, without comment by this court, in *People v. Pollution Control Board* (1983), 113 Ill. App. 3d 232, 446 N.E.2d 915, *rev'd on other grounds sub*

*nom. Pioneer Processing, Inc. v. Environmental Protection Agency* (1984), 102 Ill. 2d 119, 464 N.E.2d 238. In that case, the Board filed its *order* on February 16, 1982, within the applicable 90-day period. It delayed filing its *opinion* until March 4, 1982, about 16 days after the 90-day period had run.

Moreover, there has been no showing of prejudice suffered by petitioner as a result of the short delay between releasing the order and the opinion. This absence of prejudice exists even if petitioner had filed a petition for review in this court prior to the Board's release of the August 10 opinion. (See *Richerson v. Jones* (3d Cir. 1977), 551 F.2d 918, 922-23 & n.6a (premature appeal taken from an order which is *not final* but which is followed by an order that *is final* may be regarded as an appeal from the final order in the absence of a showing of prejudice to the other party).) In the present case, petitioner suffered no harm. Yet a severe burden would be imposed on the community involved, and on the resources of the municipal and administrative agencies involved, if we deny judicial review under the circumstances before us. See *Citizens Against Randolph Landfill (CARL) v. Pollution Control Board* (1988), 178 Ill. App. 3d 686, 533 N.E.2d 401 (180-day deadline considered waived where court finds injustice would result, including denial of the right of citizens of county to an adjudication of the disposal company's application on its merits).

The majority also finds that the Board's July 13 order indicates it intended to delay "final action" until the August 10 opinion was filed. It is appropriate to consider an administrative agency's intent in taking certain action. *People v. Pollution Control Board* (1983), 113 Ill. App. 3d 282, 446 N.E.2d 915, *rev'd on other grounds sub nom. Pioneer Processing, Inc. v. Environmental Protection Agency* (1984), 102 Ill. 2d 119, 128, 464 N.E.2d 238 (The Board's failure to issue decision in 90 days was not an attempt to circumvent section 40 requirement. "[T]he Board was conscientious in attempting to comply with the 90-day limit."); *Cf. Marquette Cement Manufacturing Co. v. Pollution Control Board* (1980), 84 Ill. App. 3d 434, 405 N.E.2d 512 (Board's conduct was a transparent attempt to circumvent the 90-day requirement).

Here, the Board majority clearly intended to meet the 120-day time limit. The statutory deadline was June 27. Petitioner waived the deadline in writing, and a deadline of July 13 was set. The order was filed that day. The Board then filed the opinion 28 days later, at the next Board meeting when the member who held the swing vote was present.

Moreover, there is no indication that the Board tried to mislead

petitioner, or to circumvent the 120-day requirement, *e.g.*, by failing to hold a hearing or issue a final decision as to whether it would affirm or reverse the local board's decision to deny the petition. The order states that the Village's denial of site suitability is "hereby affirmed." It contains no suggestion of the effective date being at some time in the future. The statement that the time period for filing the motion for reconsideration would not start to run until August 10 does not indicate the Board did not intend the July 13 order not to have legal effect until August 10. Instead, it extended the time for 28 days purely for petitioner's benefit.

I would conclude that the July 13 order was "final action," and that the August 10 opinion did not need to be filed simultaneously with the order. I would reach the merits of the case and affirm the Board's decision to deny petitioner's application.